IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-01756-PAB-KAS

CHASE SMITH, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

PARA ENERGY GROUP, LLC, and
ZECO EQUIPMENT, LLC,

    Defendants.

---

# ORDER

---

This matter comes before the Court on Defendant Para Energy Group, LLC's Motion to Dismiss Collective Action [Docket No. 15], Defendant Para Energy Group, LLC's Motion to Dismiss and Compel Arbitration [Docket No. 16], and Defendant ZECO's Motion to Dismiss and to Compel Individual Arbitration [Docket No. 18].

## I.  BACKGROUND

On July 11, 2023, plaintiff Chase Smith initiated this case by filing a collective action complaint against defendants Para Energy Group, LLC ("Para Energy") and ZECO Equipment, LLC ("ZECO").  Docket No 1.  Mr. Smith alleges that defendants failed to pay overtime wages owed to Mr. Smith and other similarly situated workers.  *Id.* at 1, ¶¶ 1-3.  Para Energy and ZECO are oilfield services companies.  *Id.* at 2, ¶¶ 7, 10.  The complaint alleges that the defendants "employed and/or jointly employed Smith and similarly situated Solids Control Technicians to operate and service equipment that removes drill cuttings from drilling fluids."  *Id.*, ¶ 15.  Mr. Smith asserts one cause of

action against both defendants: failure to pay Mr. Smith and similarly situated employees overtime at one and a half times their regular pay rates in violation of the overtime provisions of the Federal Labor Standards Act ("FLSA").  *Id.* at 5, ¶¶ 58-61.

On August 11, 2023, Para Energy filed two motions: Defendant Para Energy Group, LLC's Motion to Dismiss Collective Action, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Docket No. 15, and Defendant Para Energy Group, LLC's Motion to Dismiss and Compel Arbitration, pursuant to Rule 12(b)(3).  Docket No. 16.  On August 14, 2023, ZECO filed Defendant ZECO's Motion to Dismiss and to Compel Individual Arbitration.  Docket No. 18.  The defendants argue that Mr. Smith's claims are barred by an arbitration agreement ("Agreement").  Docket No. 15 at 2, ¶ 4; Docket No. 16 at 2, ¶ 5; Docket No. 18 at 1.  The defendants urge the Court to enforce the Agreement and compel arbitration.  Docket No. 15 at 2, ¶ 4; Docket No. 16 at 2, ¶ 5; Docket No. 18 at 1.  Para Energy attached a copy of the Agreement, which was electronically signed by Mr. Smith, to its motions.  Docket Nos. 15-1, 16-1.  Mr. Smith does not dispute the authenticity of the Agreement, including the fact that he signed it on September 2, 2022.  Docket No. 45 at 2.

## II. ARBITRATION AGREEMENT

The Agreement[1] includes the following provisions:

> **MUTUAL AGREEMENT TO ARBITRATE ALL DISPUTES**
> All disputes between [SIGNED PARTY BELOW] and Para Energy Group LLC ("Company") or between [SIGNED PARTY BELOW] and [Para LLC, Para Energy Group LLC, ITS' [sic] AFFILIATES, AND/OR CUSTOMERS], at which you were assigned to work, shall be resolved exclusively through arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and administered by the American Arbitration Association ("AAA")

---

[1] Because the exhibits are identical, the Court will cite only Docket No. 15-1 when referencing the Agreement.

(www.adr.org) under its Employment Arbitration Rules, except, the parties agree to be bound by the Federal Rules of Civil Procedure (except Rule 23) and the Federal Rules of Evidence.

**COVERED CLAIMS.** The types of disputes covered by this Agreement include, but are not limited to, (i) disputes regarding the formation, terms/conditions, and cessation of your employment; (ii) compensation, overtime, tips; and/or (iii) unlawful discrimination, harassment, or retaliation. These are examples of claims which may arise under a statute (e.g., the Uniform Trade Secrets Act, the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, the Fair Labor Standards Act, or similar state or local statutes addressing the same or similar subject matters) or under common law (e.g., tort or contract claims).

* * *

**CLASS/COLLECTIVE ACTION AND JURY WAIVER.** By signing this Agreement, you agree that all claims will be pursued on an individual basis only. You are waiving your right to commence, or be a party to, any class or collective claim(s) or jointly to bring any claim(s) against the Company or the Client Company with any other person. The parties further agree that such claims shall be subject to a non-jury trial in the state or (if jurisdiction exists) federal court that is closest to the location where you last worked for the Company.

**PROCESS.** . . . . To the fullest extent available under the Federal Arbitration Act, the arbitrator shall have exclusive authority to hear and decide all questions of arbitrability and of the enforcement or validity of the agreements to arbitrate. . . .

Docket No. 15-1.

### III.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") "reflect[s] both a liberal . . . policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Sanchez v. Nitro-Lift Techs., LLC*, 762 F.3d 1139, 1145 (10th Cir. 2014) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Accordingly, courts "must rigorously enforce arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (quotation and citation omitted),

3

and resolve "any doubts concerning the scope of arbitrable issues" in favor of arbitration. *Sanchez*, 762 F.3d at 1146 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). "In addition, this liberal policy 'covers more than simply the substantive scope of the arbitration clause,' and 'encompasses an expectation that [arbitration] procedures will be binding.'" *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999).

A court considering a motion to compel arbitration must initially examine the scope of the parties' arbitration agreement and then determine whether the plaintiff's claims are within that scope. *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (citing *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004)). "To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry." *Id.* (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)). First, "a court should classify the particular clause as either broad or narrow." *Louis Dreyfus Negoce*, 252 F.3d at 224. Next, if the arbitration clause is narrow, "the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue" that will generally not be arbitrated. *Id.* However, "where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* If the court determines that the arbitration clause is broad, it must then apply the presumption in favor of arbitrability. *Id.*

4

"[T]he FAA maintains a dichotomy whereby, pursuant to private contract, some legal claims get arbitrated while others go to court." *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1254 (10th Cir. 2018) (Tymkovich, C.J., concurring). The term "arbitrability" is used "to denote a claim's belonging to one forum or the other. A 'question of arbitrability' is therefore a question about whether the parties have agreed to settle a particular claim through arbitration or instead litigate it in court." *Id.* Thus, the "presumption of arbitrability" refers to the presumption that claims should be settled through arbitration. *See id.*; *Louis Dreyfus Negoce*, 252 F.3d at 224.

## IV. ANALYSIS

### A. Whether the Agreement Mandates Arbitration of Mr. Smith's Claim

To determine whether Mr. Smith must settle his claim through arbitration, Court will first determine the scope of the arbitration agreement. *See Cummings*, 404 F.3d at 1261. The Agreement states that "[a]ll disputes" between Mr. Smith and Para Energy or between Mr. Smith and Para Energy's affiliates or customers "shall be resolved exclusively through arbitration." Docket No. 15-1. It further provides that the "types of disputes covered by this Agreement include, but are not limited to . . . disputes regarding . . . compensation [and] overtime . . . which may arise under" the FLSA. *Id.* The Agreement also enumerates seven types of claims that are not covered by the Agreement. *Id.* Despite these seven exceptions, the Court finds that the Agreement is broad since it applies to "all disputes" and encompasses "all disputes" between not only Mr. Smith and Para Energy, but between Mr. Smith and Para Energy's affiliates and customers. *Id.*; *see Cummings*, 404 F.3d at 1262 (contrasting a broad provision referring all disputes arising out of a contract to arbitration with a narrow provision

5

limiting arbitration to specific disputes). Therefore, the Court will apply the presumption in favor of arbitration to the Agreement.[2]

Defendants argue that Mr. Smith's claim is subject to mandatory arbitration. Docket No. 16 at 2, ¶ 5; Docket No. 18 at 6. Because the Agreement is broad and explicitly requires Mr. Smith to resolve disputes regarding overtime compensation arising under the FLSA through arbitration, the Court agrees with defendants and finds that Mr. Smith's FLSA claim is subject to mandatory arbitration.

### B.  Whether ZECO is a Third Party Beneficiary

ZECO argues that, although it is not a signatory to the Agreement, Mr. Smith's claim against ZECO must be arbitrated under the Agreement because ZECO is Para Energy's customer and therefore a beneficiary of the Agreement. Docket No. 18 at 7-8. Under Colorado law,[3] a "person not a party to an express contract may bring an action on the contract if the parties to the agreement intended to benefit the non-party, provided that the benefit claimed is a direct and not merely an incidental benefit of the contract." *Parrish Chiropractic Centers, P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1056 (Colo. 1994). "While the intent to benefit the non-party need not be expressly recited in the contract, the intent must be apparent from the terms of the agreement, the surrounding circumstances, or both." *Id.* The Agreement states that

---

[2] The Court may apply this presumption because the parties do not dispute the existence of a valid arbitration agreement. *See Bellman v. i3Carbon*, LLC, 563 F. App'x 608, 613 (10th Cir. 2014) (unpublished) (citations omitted).

[3] The parties appear to agree that Colorado law applies to the Agreement. Docket No. 23 at 3; Docket No. 18 at 7. The Court will operate under the same premise. *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

6

"[a]ll disputes between [Mr. Smith and Para Energy] or between [Mr. Smith and Para Energy's] affiliates and/or customers [ ], at which [Mr. Smith was] assigned to work,[4] shall be resolved exclusively through arbitration."  Docket No. 15-1 (footnote added). Based on this language, a dispute between Mr. Smith and Para Energy's customers would be subject to the Agreement, even if the dispute did not involve Para Energy. Thus, the Agreement manifests Mr. Smith's and Para Energy's intent[5] to benefit Para Energy's customers by permitting them to enforce the arbitration agreement.  Para Energy customers may therefore enforce the Agreement against Mr. Smith.

Mr. Smith argues that ZECO cannot enforce the Agreement as a third-party beneficiary because ZECO "offers no evidence to establish its relationship" with Para Energy.[6]  Docket No. 23 at 4.  However, ZECO has attached a copy of the Master Service Agreement between ZECO and Para Energy to its motion to compel arbitration.[7]  Docket No. 18-2.  The Master Service Agreement states that ZECO is

---

[4] Although Mr. Smith disputes whether ZECO has demonstrated that it is Para Energy's customer, he does not dispute that Para Energy assigned him to work with ZECO.  *See also* Docket No. 1 at 1-3, ¶¶ 6, 15, 24, 28.

[5] The Master Service Agreement between Para Energy and ZECO makes it a condition, for the protection of ZECO from liability for claims such as unpaid wages, that each Para Energy employee signs an arbitration agreement.  Docket No. 18-2 at 2-3, ¶ 5.  This provision in the Master Service Agreement further demonstrates that Para Energy intended for the Agreement to benefit its customers.

[6] Mr. Smith also argues that "ZECO's alleged (and secret to Smith) agreement" with Para Energy cannot "bind" him.  Docket No. 23 at 4.  Although this argument is not entirely clear, insofar as Mr. Smith argues that ZECO cannot enforce the Agreement against him because he was not aware of the terms of the contract between ZECO and Para Energy, his argument is unpersuasive.  Mr. Smith cites no legal authority for the premise that a third party beneficiary to a contract may not enforce the contract against a signatory if the signatory is unaware of the terms of a different contract between the third party and another signatory.  Moreover, the Agreement does not require Mr. Smith to know that a third party beneficiary was Para Energy's customer in order for that third party beneficiary to enforce the Agreement.

[7] Mr. Smith does not object to the authenticity of this contract.

7

"seeking services" from Para Energy and that Para Energy "agrees to supply ZECO with services and personnel at locations to be identified by ZECO as required by ZECO . . . to perform the Services." *Id*. at 1, ¶ 1.  The Master Service Agreement indicates that "[e]ach person contracted by [Para Energy] that performs the Services (each a 'Company Contractor') is an employee or independent contractor of [Para Energy]." *Id*. It is therefore clear from the Master Service Agreement that Para Energy is supplying services to ZECO and that ZECO is in fact a customer of Para Energy.  Accordingly, ZECO may enforce the Agreement against Mr. Smith.

### C.  Individual Arbitration

Defendants ask the Court to limit the scope of arbitration to Mr. Smith's individual FLSA claim as opposed to claims on behalf of a collective.  Docket No. 18 at 8-9; Docket No. 38 at 4-5.  Mr. Smith argues it is for the arbitrator, not the Court, to decide whether he may pursue classwide arbitration.  Docket No. 23 at 10-12; Docket No. 37 at 7-8.

The Supreme Court has held that the "question of arbitrability is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.* 573 U.S. 79, 83 (2002) (quotations, emphasis, alteration, and citation omitted).  In *Dish*, the Tenth Circuit considered whether this exception applied to the parties' arbitration agreement and whether the availability of classwide arbitration should be determined by the arbitrator or by the court.  *Dish*, 900 F.3d 1243-48 (applying Colorado law).  The arbitration agreement in *Dish* stated that

> any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment, employment and/or termination of employment, whenever and wherever brought, shall be resolved by arbitration. . . .  A single arbitrator engaged in the practice

8

> of law from the American Arbitration Association ("AAA") shall conduct the arbitration under the then current procedures of the AAA's National Rules for the Resolution of Employment Disputes ("Rules").

*Id.* at 1245 (emphasis omitted).  The court also noted that AAA Rule 6(a), which was incorporated into the arbitration agreement, "provides that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" *Id.* (quoting AAA, Employment Arbitration Rules and Mediation Procedures (effective Nov. 1, 2009), Rule 6(a)).  Therefore, the court held that "the broad language of the Agreement and incorporation of the [AAA] Rules clearly and unmistakably shows the parties intended for the arbitrator to decide all issues of arbitrability."  *Id.*

The Agreement between Mr. Smith and Para Energy requires that "[a]ll disputes . . . shall be resolved exclusively through arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and administered by the American Arbitration Association ("AAA") (www.adr.org) under its Employment Arbitration Rules."  Docket No. 15-1.  Thus, like agreement at issue in *Dish*, the Agreement contains "broad language" and incorporates the AAA rules.  *See Dish*, 900 F.3d at 1245.  Moreover, the Agreement explicitly shows the parties' intent that an arbitrator decide issues of arbitrability because it states that, "[t]o the fullest extent available under the Federal Arbitration Act, the arbitrator shall have exclusive authority to hear and decide all questions of arbitrability and of the enforcement or validity of the agreements to arbitrate."  Docket No. 15-1.  Therefore, the Court finds that the Agreement "unmistakably shows the parties intended for the arbitrator to decide all issues of arbitrability."  *See Dish*, 900 F.3d at 1245; *Goldgroup Resources, Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1191 (10th

9

Cir. 2021) ("we have repeatedly held that contracting parties' incorporation of the AAA Rules into their arbitration agreement constitutes 'clear and unmistakable evidence of an agreement to arbitrate arbitrability'") (quoting *Dish*, 900 F.3d at 1246).

Defendants argue that *Dish* is distinguishable because the agreement at issue in that case did not contain a class and collective action waiver.  Docket No. 32 at 7; Docket No. 38 at 4.  However, the Tenth Circuit's decision in *Dish* was based on whether the parties intended the arbitrator to decide all issues of arbitrability, including whether the arbitration agreement permitted classwide arbitration, and defendants do not explain why the presence of a class and collective action waiver would indicate that the parties did not intend the arbitrator to decide whether class arbitration was available.  Therefore, based on its finding that Mr. Smith and Para Energy intended for the arbitrator to decide issues of arbitrability, the Court will not order Mr. Smith to arbitrate his claims on an individual basis.  Rather, that is an issue to be determined by the arbitrator.

### **D.  Stay**

Mr. Smith argues that, in the event that the Court compels arbitration, the Court should stay this action rather than dismissing it.  Docket No. 23 at 9; Docket No. 37 at 6-7.  Defendants do not object to staying proceedings in this case in lieu of dismissal. Docket No. 32 at 7; Docket No. 38 at 3.

When an action is properly referable for arbitration and any party requests a stay, the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3; *see Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994) (stating that, upon a motion to stay

pending arbitration, the "proper course . . . would have been for the district court to grant Defendant's motion and stay the action pending arbitration" rather than dismiss the action).  Administrative closure is "the practical equivalent of a stay."  *Power Dev. Co., LLC v. Colo. Pub. Utilities Comm'n*, No. 17-cv-00683-CMA-NYW, 2018 WL 5996962, at *4 (D. Colo. Nov. 15, 2018) (quoting *Quinn v. CGR*, 828 F.2d 1463, 1465 n.2 (10th Cir. 1987)).  Administrative closure pursuant to D.C.COLO.LCivR 41.2 may be appropriate when a case would otherwise be stayed for an indefinite amount of time.  *See Garcia v. State Farm Mut. Fire & Cas. Co.*, No. 20-cv-02480-PAB-MEH, 2021 WL 4439792, at *6 (D. Colo. Sept. 27, 2021) (ruling that case should be administratively closed pursuant to D.C.COLO.LCivR 41.2 because the arbitration proceedings would last for an indefinite period of time).  Because this case will be stayed for an unknown period of time pending arbitration proceedings, the Court finds good cause to administratively close this case pursuant to D.C.COLO.LCivR 41.2, subject to being reopened for good cause shown.  Either party may move to reopen the case at the end of the arbitration process or for other good cause.

**V. CONCLUSION**

Therefore, it is

**ORDERED** that Defendant Para Energy Group, LLC's Motion to Dismiss and Compel Arbitration [Docket No. 16] and Defendant Zeco's Motion to Dismiss and to Compel Individual Arbitration [Docket No. 18] are **GRANTED** in part and **DENIED** in part.  Those portions of defendants' motions seeking to compel arbitration are **GRANTED**.  Those portions of defendants' motions seeking to compel individual arbitration and to dismiss Mr. Smith's claim are **DENIED**.  It is further

**ORDERED** that Defendant Para Energy Group, LLC's Motion to Dismiss Collective Action [Docket No. 15] is **DENIED**.  It is further

**ORDERED** that, pursuant to D.C.COLO.LCivR 41.2, this case is administratively closed.  Either party may move to reopen the case for good cause.  It is further

**ORDERED** that the parties shall file a status report with the Court on or before **August 21, 2024** or within 15 days of completion of the arbitration process, whichever is earlier.

DATED February 21, 2024.

BY THE COURT:

 s/ Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge